MURPHY, Circuit Judge,
dissenting.
I respectfully disagree with the majority’s conclusion that AO Skidmore had pri- or involvement with respect to Taxpayers’ unpaid 2001 and 2002 income taxes before he conducted the CDP hearing for those tax years.
When AO Skidmore determined that Taxpayers’ delinquent 2000 tax liability should not be placed in currently uncollectable status, he was aware Taxpayers had self-reported a $33,686 individual income tax liability for 2001 and a $147,542 individual income tax liability for 2002, both of which were delinquent. The majority concludes that AO Skidmore’s awareness of Taxpayers’ 2001 and 2002 tax liabilities, and his consideration of those liabilities when he evaluated their eligibility for collection alternatives as part of the 2000 CDP hearing, constitutes prior involvement, thereby disqualifying him from conducting the 2001/2002 CDP hearing.
Section 6330(b)(3) prohibits an appeals officer conducting a CDP hearing from having “prior involvement with respect to the unpaid tax ” that is the subject of the CDP hearing. 26 U.S.C. § 6330(b)(3) (emphasis added). Although the term “prior involvement” is not defined in § 6330(b)(3), the common definition of “involvement” includes “the state or fact of being involved.” Webster’s Third New International Dictionary 1191 (1993). “Involve” means “to draw in as a participant.” Id.
Congressional use of the word “involvement” in conjunction with the phrase “with respect to the unpaid tax” demonstrates the statute requires actual participation by the appeals officer in matters centered on the unpaid tax at issue before the officer is deemed disqualified from conducting a CDP hearing with respect to that tax. See Bailey v. United States, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (holding the plain meaning of a statutory term can be gleaned from “its place and purpose in the statutory scheme”). Mere knowledge of the existence of a self-reported and unpaid tax liability or tangential consideration of any such conceded liability during an independent CDP hearing does not implicate any matter centered on the unpaid tax liability.
In conjunction with the 2000 CDP hearing, Taxpayers submitted financial information in compliance with Treas. Reg. § 301.6330-l(e). That information includ *1129 ed Taxpayers’ 2001 and 2002 individual income tax returns. AO Skidmore considered the 2001 and 2002 unpaid tax liabilities only in the context of evaluating whether Taxpayers had a current ability to pay their 2000 tax liability or qualify for collection alternatives. AO Skidmore did not process Taxpayers’ 2001 and 2002 individual income tax returns. He was not involved in the determination of the correct tax or penalty owed for those years.[1] He did not participate in pre-levy collection actions and he did not conduct a prior CDP hearing with respect to the 2001 or 2002 tax liabilities. Consideration of the 2001 and 2002 tax liabilities during the 2000 CDP hearing did not encompass any issue that involved those unpaid tax liabilities. Thus, under the plain meaning of “prior involvement,” as that term is used in § 6380(b)(3), AO Skidmore was not disqualified from conducting the 2001/2002 CDP hearing.
The majority concludes that AO Skid-more’s “consideration of [the 2001 and 2002] liabilities during the CDP hearing for 2000 was a material factor in his decision and constitutes prior involvement within the meaning of I.R.C. § 6330(b)(3).” Majority Opinion at 15. I have no quarrel with the conclusion that AO Skidmore’s consideration of Taxpayers’ self-reported tax liabilities for 2001 and 2002 was a factor in the decisions he made with respect to the 2000 CDP hearing and Taxpayers’ 2000 tax liabilities. Section 6330(b)(3), however, prohibits him from conducting the 2001/2002 CDP hearing only if he had prior involvement with respect to Taxpayers’ 2001 and 2002 taxes. Simply considering Taxpayers’ self-reported 2001 and 2002 tax liabilities as part of the 2000 CDP hearing does not constitute “prior involvement” in the unpaid taxes for 2001 and 2002. It is only such prior involvement that the statute prohibits.
The majority’s conclusory and unsubstantiated belief that the opinion AO Skid-more formed about the collectability of the 2001 and 2002 taxes liabilities when he conducted the 2000 CDP hearing “was, or at least could have been, material to his decision regarding the 2001 and 2002 liabilities,” is both conjectural and irrelevant to the issue of statutory construction before this panel. Under the majority’s reading of the statute, consideration of the conceded 2001 and 2002 tax liabilities at the 2000 CDP hearing for purposes of determining Taxpayers’ ability to pay their 2000 tax liability disqualifies AO Skidmore from conducting the subsequent CDP hearing. Section 6330(b)(3), however, does not prohibit AO Skidmore from conducting the 2001/2002 CDP hearing merely because he conducted Taxpayers’ 2000 hearing or was aware of the financial information submitted by Taxpayers in connection with that hearing. Thus, it is only AO Skidmore’s consideration of the 2001 and 2002 tax liabilities that gives rise to his disqualification. This is true even though, under the majority’s reasoning, prior opinions he formed about Taxpayers’ ability to pay their other debts and obligations may have also been material to his opinion about the collectability of the 2001 and 2002 taxes. That does not make sense.
Because I would hold AO Skidmore had no prior involvement in the unpaid taxes that were the subject of the 2001/2002 CDP hearing, I would affirm the Tax Court on this issue.

. The record demonstrates the 2001 and 2002 returns were processed by Revenue Officer Linda Andrews who sent Taxpayers a Notice of Intent to Levy on October 20, 2003, when the amounts owed were not paid in full.